IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DAWN S. SHERMAN, a minor, through )
ROBERT I. SHERMAN, her father and next friend, )
on behalf of herself and all other similarly )
situated, )
)
        Plaintiff, )     No.  07 C 6048
    v. )
)     Judge Robert W. Gettleman
TOWNSHIP HIGH SCHOOL DISTRICT 214, on )
behalf of itself and all other school districts )
similarly situated, and DR. CHRISTOPHER )
KOCH, State Superintendent of Education, )
)
        Defendants. )

**MEMORANDUM OPINION AND ORDER**

This court has issued two opinions in this action, in which plaintiff Dawn S. Sherman, a

minor, through Robert I. Sherman, her father and next friend, attacks the Illinois Silent

Reflection and Student Prayer Act, 105 ILCS 20/1 (the "Statute") as unconstitutional.[1] In the

earlier opinions, the court denied the motions to dismiss filed by defendant Christopher Koch,

Illinois Statue Superintendent of Education (the "Superintendent"), certified plaintiff and

defendant classes (with defendant Township High School District 214 ("District 214") as the

defendant class representative), and entered preliminary injunctions enjoining the Superintendent

and the defendant class of Illinois school districts from enforcing the Statute. The case is now

_____

[1]Sherman v. Township High School Dist. 214, 2007 WL 3446213 (N.D. Ill. 2007)
("Sherman I"); Sherman v. Township High School Dist. 214, 540 F. Supp.2d 985 (N.D. Ill.
2008) ("Sherman II").

before the court on plaintiff's and defendants' motions for summary judgment.[2]  For the reasons

discussed below, the court grant plaintiff's motion and denies defendants'.

## BACKGROUND

The court sees no reason to repeat the entire background information and its previous

holdings, except as necessary to address the arguments raised by the parties and the amici curiae[3]

in connection with the current dispositive motions.  The history of the Statute was stated in

Sherman I as follows:

> Since 1969, Illinois has had a statute regarding a "period of silence" to be observed daily
> in public schools statewide.  The original statute stated that:
>
>> In each public school classroom the teacher in charge may
>> observe a brief period of silence with the participation of all the
>> pupils therein assembled at the opening of every school day.  This
>> period shall not be conducted as a religious exercise but shall be an
>> opportunity for silent prayer or for silent reflection on the
>> anticipated activities of the day.  (Emphasis added.)
>
> In 1990, the Illinois legislature amended the statute, 105 ILCS 20/1, to title the law "The
> Silent Reflection Act."  In 200[2], the legislature again amended the statute to change its
> name to "The Silent Reflection and Student Prayer Act."  The amendment also added the
> following substantive section, codified as 105 ILCS 20/5:
>
>> Sec. 5.  Student prayer.  In order that the right of every
>> student to the free exercise of religion is guaranteed within the
>> public schools and that each student has the right to not be subject

---

[2]The court recognizes that the factual record in this case is rather sparse, especially when
compared to the trial records that informed the courts in most of the school prayer cases cited by
both sides as precedent.  The parties in the instant case chose to proceed by way of summary
judgment, however, and the court has concluded that the record is minimally sufficient to
support that choice.

[3]The court has granted leave to the ACLU of Illinois to appear as amicus curiae on behalf
of plaintiff, and to the Alliance Defense Fund ("ADF") to appear as amicus curiae on behalf of
defendants.  The court wishes to acknowledge the important contributions by each of the amici
to the orderly and professional disposition of this litigation.

to pressure from the State either to engage in or to refrain from religious observation on public school grounds, students in the public schools may voluntarily engage in individually initiated, non-disruptive prayer that, consistent with the Free Exercise and Establishment Clauses of the United States and Illinois Constitutions, is not sponsored, promoted or endorsed in any manner by the school or any school employee.

In October 2007, the legislature amended the law once again to make the period of silence mandatory. The statute now reads, in relevant part, "In each public school classroom the teacher <u>shall</u> observe a brief period of silence with the participation of all the pupils therein assembled at the opening of every school day." (Emphasis added.) The statute became effective upon its passage, and plaintiff's school began implementing the statute in October by announcing a "moment of silence" at the beginning of each school day.

**DISCUSSION**

Plaintiffs and the ACLU attack the constitutionality of the Statute on a number of grounds, including violation of the Establishment Clause of the First Amendment, as applied to the states by the Fourteenth Amendment,[4] and vagueness. The Establishment Clause provides, "Congress shall pass no law respecting an establishment of religion, or prohibiting the free exercise thereof."

Establishment Clause challenges are analyzed under the three part test articulated in <u>Lemon v. Kurtzman</u>, 403 U.S. 602 (1971).[5] Under <u>Lemon</u>, to survive an Establishment Clause challenge a statute must: (1) have a secular legislative purpose; (2) have a principle or primary effect that neither advances nor inhibits religion; and (3) not foster an excessive government entanglement with religion. <u>Id</u>. at 612-13.

---

[4]<u>See</u>, <u>Wallace v. Jaffree</u>, 472 U.S. 38, 48-49 (1985).

[5]Although <u>Lemon</u> has come under heavy criticism, it has not been overruled and the Court has continued to use its test. <u>See</u> <u>McCreary County, Ky v. American Civil Liberties Union of Ky</u>, 545 U.S. 844 (2005).

Although a statute must have a "clearly secular purpose" <u>Wallace v. Jaffrie</u>, 472 U.S. 38,

56 (1985), the purpose need not be exclusively secular. <u>Lynch v. Donelly</u>, 465 U.S. 668, 681 n.6

(1984). A court should usually give deference to the legislature's stated purpose, but that secular

purpose must be sincere and not a sham. <u>Edwards v. Aguillard</u>, 482 U.S. 578, 586-87 (1987).

"When a governmental entity professes a secular purpose for an arguably religious policy, the

government's characterization is, of course, entitled to some deference. But it is nonetheless the

duty of the courts to 'distinguis[h] a sham secular purpose from a sincere one.'" <u>Santa Fe Indep.</u>

<u>School Dist. v. Doe</u>, 530 U.S. 290, 308 (2000) (quoting <u>Wallace</u>, 472 U.S. at 75 (O'Connor, J.,

concurring)). To determine a statute's purpose, the court must examine the language on its face,

as well as the legislative history and specific sequence of events leading to its adoption.

<u>Edwards</u>, 482 U.S. at 594-95.

The parties and the amici have devoted a great deal of effort discussing the legislative

motivation behind the Statute and the amendments thereto, as well as proffering expert reports

concerning the effect the Statute would have on school children of various ages. In addition, the

Superintendent has tendered the "results" of a "survey" he conducted of the 873 school districts

in Illinois regarding how the districts interpreted and observed the mandates of the Statute.

Because plaintiff's attack on the constitutionality of the Statute is primarily facial, the court will

begin its analysis with an interpretation of the clear language of the Statute itself, and will then

address the extrinsic evidence offered by the parties and the amici.

To begin, the Statute requires every classroom teacher to "observe a brief period of

silence with the participation of all the pupils therein assembled at the opening of every school

day. This period shall not be conducted as a religious exercise but shall be an opportunity for

silent prayer or reflection on the anticipated activities of the day." Thus, every pupil must

participate in the period of silence, and that period is limited to one of two purposes: prayer or

"reflection" on the days activities. Because the Statute applies to school children ranging in ages

from five (kindergarten) to eighteen (high school seniors), the court must be "particularly

vigilant in monitoring compliance with the Establishment Clause." Edwards, 482 U.S. at 584-

85. As the Court noted in Edwards, "[s]tudents in [public schools] are impressionable and their

attendance is involuntary." Id.

    As noted by this court in Sherman I, the clear language of the Statute compels each

classroom teacher to ensure that the period of silence is used by each student only for prayer or

reflection on the activities of the day ahead ("This ... shall be an opportunity for silent prayer or

for silent reflection on the anticipated activities of the day.") Even silent thoughts by a student

about a professional sporting event or a family vacation would appear to violate the stated intent

of the Statute. The only way a teacher could be assured of compliance, therefore, would be to

explain to her pupils at the opening of "every school day" that they use the period of silence for

one of the two permitted purposes. Consequently, the teacher is compelled to instruct her pupils,

especially in the lower grades, about prayer and its meaning as well as the limitations on their

"reflection."

    The plain language of the Statute, therefore, suggests an intent to force the introduction

of the concept of prayer into the schools. This is where the Statute crosses the line and violates

the Establishment Clause. Prayer is without doubt "a religious activity," Engel v. Vitale, 370

U.S. 421, 424 (1962), and requiring its instruction in the public schools constitutes an

unconstitutional endorsement of religion. "[G]overnment may not coerce anyone to support or

participate in religion or its exercise or otherwise act in a way which 'establishes a [state] religion or religious faith, or tends to do so.'" Lee v. Weisman, 505 U.S. 577, 587 (1992) (quoting Lynch v. Donnelly, 465 U.S. 668, 678 (1984)). Although the Superintendent and amicus ADF posit that the period of silence can be used for any purpose,[6] the Statute clearly limits the purposes to the two specified in its language. The fact that no one, not even the sternest classroom teacher, can police a child's thoughts only reenforces the necessity for the teacher to explain the option of prayer as one of the two permitted subjects of the silent period. Contrary to the suggestion that the purpose of the amendment was simply to require a "moment of silence" to start the day, the clear import of adding the mandatory language was to force the student to choose prayer or reflection. As such, the Statute requires each teacher to endorse religion.

Even if the court were to conclude that the plain language of the Statute does not demonstrate a sham secular purpose, the legislative history does. First, the legislative history of amendments to the Statute demonstrates that the Illinois General Assembly intended the Statute to require each pupil to engage in, or consider engaging in, a religious exercise. As originally enacted in 1969, the Statute was untitled. In 1990 the Statute became known as "The Silent Reflection Act." The language of what is now 105 ILCS 20/1 ("Section 1") was identical to the current section except that the Statute was permissive rather than mandatory (the word "may"

---

[6]The court rejects the Superintendent's submissions of 15 email responses to his questionnaire sent to all 873 school districts in the state. As pointed out by the ACLU, the responses are clearly inadmissible as hearsay under Fed. R. Evid. 802, and the Superintendent has offered no evidence to validate either his method of survey or its reliability, especially given the low response rate (7%).

was used rather than the word "shall").  Thus, each classroom teacher had the option to observe a

moment of silence and, consequently, the option of how to observe it.

As originally drafted, therefore, the legislature gave its blessing (perhaps a poor choice of

words) to the classroom teacher who decided to use a period of silence during which pupils

could pray or do anything or nothing silently and in a non-religious manner.  As all parties and

amici in the instant case agree, the observance of a period of silence in which students could

silently pray voluntarily does not offend the Constitution.  See, Wallace, 472 U.S. at 62 (Powell,

J, concurring).  If a particular teacher or school district decided to suggest or compel prayer

during the period of silence, that district or teacher would step over the line.  The Statute,

however, did not compel or even suggest that such a violation of the Establishment Clause

occur.[7]

Beginning in 2002, the Illinois Legislature began to take actions that indicated an intent

to use the period of silence for religious purposes.  In that year, the name of the Statute was

changed from "The Silent Reflection Act" to "The Silent Reflection and Student Prayer Act."

As the Supreme Court noted in Wallace, 472 U.S. at 58-60, the Alabama legislature's changing

the language of a statute that previously referred only to "meditation" to "meditation or

voluntary prayer" conveyed a message of state endorsement and promotion of prayer, indicating

"that the State intended to characterize prayer as a favored practice."  As noted above, the 2002

amendment also added § 5, which guaranteed the right of each public school pupil to engage in

_____

[7]Although the wording of the Statute was identical to the current version except for "may
and "shall," because a teacher always had the ability to bring a class to silence at any time for
any reason including reflection, there was no need to follow the Statute's stated reasons.  The
substitution of "shall" for "may" changed that.

or refrain from religious observation on public school grounds. Of course, this right was already firmly established by Supreme Court constitutional jurisprudence. As the Court found in Wallace, in a similar context, "only two conclusions are consistent with the text" of the act that added the word "prayer" to a statute when a student's right to engage in silent prayer was already protected: "(1) the statute was enacted to convey a message of state endorsement and promotion of prayer, or (2) the statute was enacted for no purpose. No one suggests that the statute was nothing but a meaningless or irrational act." Id. at 59. Justice Stevens, writing for the Court in Wallace, also noted that "statutes are usually enacted to change existing law." Id. at 59, n.48. Thus, adding language to confirm a right that was already firmly established served no legitimate purpose. As in Wallace, this court concludes that the addition of "and Student Prayer" to the title of the Statute conveys the true intention of the legislature to endorse and encourage prayer.

Finally, in 2007, the General Assembly took the last step that, in this court's view, clearly indicates an intention to ensure that school children would use the period of silence either for prayer or to contemplate prayer. The word "may" in Section 1 of the Statute was changed to "shall," thus making the period of silence mandatory in each classroom at the beginning of each day for each student. The legislative history for the 2007 amendment demonstrates that some legislators were concerned that this amendment would provoke litigation because the Statute would be construed as violating the Establishment Clause. Others suggested that the bill passed (originally, before veto by the Governor) because legislators were concerned about sending a message to some people of certain religious persuasions in their district. One representative noted that the only calls he received about the bill were from rabbis, priests, reverends, and people who favored prayer in public schools.

Even the sponsor of the 2007 amendment attempted to minimize the effect of the Statute by comparing it to the public prayer by which the Illinois General Assembly opens its daily sessions. See Van Zandt v. Thompson, 839 F.2d 1215, 1222 (7th Cir. 1988). Indicating her true purpose in response to a question from a journalist about why the legislature should make educational decisions, Senator Kimberly Lightford stated: "It will allow for more uniformity. Here in the General Assembly we open every day with a prayer and Pledge of Allegiance. I don't get a choice about that. I don't see why students should have a choice." Confirming this intent, several members of the House broke out in the following song when the bill first came up for vote:

(Sung to the tune of "Sounds of Silence"):

Hello school prayer, our old friend,
it's time to vote on you again,
in our school house without warning,
you seek a moment in the morning
and the outcome at the end of this debate, in our State,
should be the sound ssshhh of silence.

Indeed, as plaintiff points out, if uniformity was indeed the true goal of the 2007 amendment, it falls woefully short. By failing to specify a duration of the "brief period" the Statute promotes irregular application – classroom to classroom and district to district. Nor does the Statute contain any provision for enforcement, leaving it totally up to each teacher to decide what to do about students who fail to comply. These factors highlight the true purpose of the Statute: to promote religion in the public schools.

In any event, as amended in 2007 the Statute has the effect, as discussed above, to compel every classroom teacher to ensure that each student consider prayer as one of the two options to observe during the period of silence. The conclusion is inescapable that this is

9

precisely what the General Assembly intended. The Statute is a subtle effort to force students at impressionable ages to contemplate religion.

The Superintendent and the amicus ADF argue that this conclusion is belied by the disclaimers in both Sections 1 and 5 of the Statute. To quote Justice O'Connor's concurring opinion in <u>Wallace</u>, "It is of course possible that a legislature will enunciate a sham secular purpose for a statute. I have little doubt that our courts are capable of distinguishing a sham secular purpose from a sincere one." <u>Wallace</u>, 472 U.S. at 75. Although the parties and amici in this case vigorously dispute the educational value of a mandatory period or moment of silence at the beginning of the day in the public schools, the court can accept the legitimacy of such a policy and yet still conclude that, as drafted, the Statute in the instant case violates the Establishment Clause for the reasons discussed above.[8]

Finally, if the legislature sincerely wanted to adopt a period of silence for reflection there was a simple way to do it. The statute at issue in <u>Brown v. Gwinnett County School District</u>, 112 F.3d 1464 (11th Cir. 1997), provides a perfect blueprint. <u>Gwinnett</u> involved a challenge to the Georgia "Moment of Quiet Reflection in Schools Act" adopted in 1994 and which amended a former version that had allowed teachers to conduct a "brief period of silent prayer or meditation" at the beginning of each school day. The amended statute provided:

20-2-1050. Brief period of quiet reflection authorized; nature of period.

---

[8]The court notes parenthetically that, after certifying a defendant class of all public school districts in the state of Illinois, no district, save one, sought to intervene or take a position in this case. The single district that responded to the notice directed by the court of the pendency of this action stated that the Statute "serves no useful educational purpose."

(a) In each public school classroom, the teacher in charge shall, at the opening of school upon every school day, conduct a brief period of quiet reflection for not more than 60 seconds with the participation of all the pupils therein assembled.

(b) The moment of quiet reflection authorized by subsection (a) of this Code section is not intended to be and shall not be conducted as a religious service or exercise but shall be considered as an opportunity for a moment of silent reflection on the anticipated activities of the day.

(c) The provisions of subsections (a) and (b) of this Code section shall not prevent student initiated voluntary school prayers at schools or school related events which are nonsectarian and non-proselytizing in nature.

As is readily apparent from the language of the amendment in Gwinnett, all reference to prayer with respect to the silent period was eliminated, and Section (b) indicated that the moment was to be considered as an opportunity for a moment of silent reflection on the anticipated activities of the day. Unlike the instant Statute, the Georgia act did not compel that students be told to choose between prayer or reflection. As the Gwinnett court noted, the deletion of the references to prayer lent credence to the argument that the act's purpose was secular.

In the instant case, if the sponsors of the Illinois Statute truly intended to impose a moment of silence for reflection they would have proposed amending the Statute to ensure compliance with the Constitution, as in Gwinnett. They could have easily removed all references to prayer and all requirements that students be told that prayer is one of two options. That they did not is telling. The availability of a secular alternative is an obvious factor to be considered in deciding whether the government's choice amounts to an endorsement of religion. See County of Allegheny v. American Civil Liberties Union, 492 U.S. 573, 618 n. 67 (1989).

For all of these reasons the court concludes that the amendment has no clear secular purpose, and that the stated purpose is a sham. Therefore, the Statute fails to satisfy the first prong of the Lemon test.

11

The Statute also violates the second prong of the <u>Lemon</u> test because its primary effect is to advance or inhibit religion. The Statute violates this prong because it prefers some religions over others. It is firmly established that "[n]either a state nor the Federal Government . . . can pass laws that aid one religion, aid all religions, or prefer one religion over another." <u>Everson v. Board of Education of Ewing Tp.</u>, 330 U.S. 1, 15 (1947). By mandating a "period" of silence in which each student is given the opportunity to pray or "reflect," the state has denied the opportunity of students whose prayer is not "silent" from exercising their right to pray during this period. Although many religions, including the predominant Christian religion, embrace the notion of silent prayer, many religions do not. As noted in <u>Sherman I</u>, <u>Webster's Unabridged Dictionary</u> defines "silence" as including not merely the absence of sound, but "stillness" as well. Citing the <u>Encyclopedia of Religion</u> (Lindsay Jones Ed., 2d Ed. 2005) and other treatises, the ACLU has identified a number of religious practices that are neither silent nor still. These includes certain Jewish traditions, Muslim prayers that require a variety of postures and gestures including bowing and prostration, Native American religions and Krishna Hinduism. Practitioners of these religions would, apparently, be excluded from praying according to their faith during the "period of silence." Although a particular teacher might permit pupils engaging in such religious practices to break the "period of silence," he or she would be doing so at the peril of violating the mandate of the Statute. The Statute demonstrates an official preference for those religions that practice silent prayer over those that do not. This tells those that do not that they are "nonadherents" or "outsiders" who must find a different time to pray. <u>Lynch</u>, 465 U.S. at 688 (O'Connor, J. concurring). Consequently, the Statute violates the second prong of the <u>Lemon</u> test.

For these reasons, the court finds that the Statute violates the Establishment Clause and

its enforcement must be enjoined.

Vagueness

As the Supreme Court noted as early as 1926, "[A] statute which either forbids or

requires the doing of an act in terms so vague that [persons] of common intelligence must

necessarily guess at its meaning and differ as to its application, violates the first essential of due

process of law." Connally v. General Constr. Co., 269 U.S. 385, 291 (1926).  A vague law is

especially troublesome when, as in the instant case, "the uncertainty induced by the statute

threatens to inhibit the exercise of constitutionally protected rights." Colautti v. Franklin, 439

U.S. 379, 391 (1979).  As noted in Sherman I and discussed above, the Statute in the instant case

provides no direction as to how the "period"[9] of silence should be implemented, how long the

period should last, and whether pupils would be permitted to pray in a manner that was either

audible or required movement.  The Superintendent argues that most of these items are either de

minimus or immaterial, and should be left to the discretion of the classroom teacher.  Indeed, the

Superintendent argues that the Statute should be construed liberally enough to allow the teacher

merely to command a period of silence without discussing the two purposes for which the Statute

mandates the period to be observed.

---

[9]Although the parties and amici often refer to the "moment of silence," the Statute
mandates a "period" of silence.  Perhaps there is a subtle difference between the two terms.
"Period" in a school context (specifically in middle and high school) often refers to a class
period, such as history or algebra.  According to Webster's Unabridged Dictionary (Third
Edition), in the context of a classroom, "period" means "a time often of indefinite length but of
distinctive or specified character."

Were this Statute directed at an activity other than prayer in the public schools, this court would accord great deference to the legislature's view of the discretion to be accorded to classroom teachers. Such deference cannot be extended in the instant case, however, where the Supreme Court has instructed that courts must be particularly sensitive to monitoring compliance with the Establishment Clause in public elementary and secondary schools. Edwards, 482 U.S. at 583-84. Students in such institutions are impressionable and their attendance is involuntary, and the State exerts great authority and coercive power as a result of mandatory attendance requirements, student's emulation of teachers as role modes, and the children's susceptibility to peer pressure. Families entrust public schools with the education of their children conditioned on the understanding that the classroom will not purposely be used to advance religious views that may conflict with the private beliefs of the student and his or her family. Id. at 584. The instant Statute violates that trust.

Expert Reports

Plaintiff and amicus ACLU have tendered an expert report prepared by Louis J. Kraus, M.D., in which Dr. Kraus concludes, based upon his extensive experience in child and adolescent psychiatry, that children in the three age groups (elementary, middle and high school) have different understandings of the notions of silent prayer and silent reflection. Dr. Kraus opines that an elementary school child "is not going to have an understanding of silent reflection. Putting the term silent prayer in front of this is going to result in the whole statement being understood as silent prayer." Dr. Kraus also opines that middle school children will be subject to pressures of social acceptance in which they might feel that they would be expected to pray along with their classmates who chose to do so. Finally, Dr. Kraus opines that high school

14

students, who have developed the ability for abstract reasoning, might act out in defiance of the Statute in a way that could get them into trouble.

Although defendants attack Dr. Kraus' opinions, they are quite within the range of normal observation.[10]  Certainly, a five or six year old child cannot be expected to understand the nuances between prayer and silent reflection as much as an eighteen year old.  As discussed above, this court needs no expert to inform it that a classroom teacher in kindergarten, first, second or third grade would have to explain the meaning of prayer and silent reflection to his or her students in order to comply with the mandates of the Statute.

Amicus ADF has offered a report submitted by Dr. Trayce L. Hansen, Ph.D., who unlike Dr. Kraus has little experience with child and adolescent psychiatry or psychology.  While the court recognizes that Dr. Hansen's report could be attacked under Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993), and related cases, even accepting the report the court finds it of little or no value.  Basically, Dr. Hansen concludes that silent prayer or reflection on the activities of the day could serve useful purposes for public school pupils.  The fact that some students could benefit from these activities, of course, does not overcome the constitutional infirmities of the Statute.[11]

---

[10]Indeed, the Supreme Court has commented numerous times about the coercive atmosphere of the public school classroom.  See, e.g., Illinois ex rel. McCollum v. Board of Education, 333 U.S. 203, 227 (1948) (Frankfurter, concurring) ("... non-conformity is not an outstanding characteristic of children."); Wallace, 472 U.S. at 61.

[11]Amicus ADF has also once again attacked plaintiff's standing to bring this action.  The court has already addressed and rejected this argument in Sherman II, and will not revisit it at this time.

District 214 Motion for Summary Judgment

Plaintiff has sued District 214 (the designated defendant class representative) under 42 U.S.C. § 1983, alleging an unconstitutional municipal practice. As the parties[12] acknowledge, there must be "a direct causal link between a municipal policy or custom and the alleged constitutional violation" for there to be § 1983 liability. See City of Canton, Ohio v. Harris, 489 U.S. 378, 385 (1989). As this court has recently recognized, "it is difficult to imagine a municipal policy more innocuous and constitutionally permissible, and whose causal connection to the alleged violation is more attenuated, than the 'policy' of enforcing state law." See CSWS LLC v. Village of Bedford Park, 2008 WL 4148530, *2 (N.D. Ill. 2008), (quoting Surplus Store and Exchange, Inc. v. City of Delphi, 928 F.2d 788, 791-92 (7th Cir. 1991)). District 214's motion is based on the simple proposition that its practice of observing a period of silence as mandated by the Statute arises merely from its neutral policy of enforcing state law.

District 214's position is incorrect for a number of reasons. First, as discussed above, the Statute's vagueness confers a great deal of discretion on individual school districts as to how to enforce or observe the period of silence mandated by the Statute. As plaintiff points out, District 214 itself has established a policy to observe a 15 second period of silence at the beginning of the day before the Pledge of Allegiance without mentioning the alternatives of prayer or silent reflection on the day's activities. Indeed, the Superintendent has argued at length that the Statute

---

[12]Neither amici take any position with respect to District 214's motion for summary judgment.

allows the various school districts a great deal of discretion in how to enforce the Statute, including in ways that arguably do not constitute violations of the Establishment Clause.[13]

It thus appears that District 214, like many other districts in the state of Illinois, has been compelled to interpret and adopt policies and procedures that it deems necessary to comply with the Statute. The constitutional infirmities of this legislation require the exercise of discretion by each school district that creates the causal link between the municipal policy embodied in that discretion and the constitutional deprivation.[14] For these reasons, District 214's motion for summary judgment is denied.

## CONCLUSION

For the foregoing reasons, the court grants plaintiff's motion for summary judgment and denies defendants' motions, and finds that the Statute, 105 ILCS 20/1, is unconstitutional. Defendants are hereby permanently enjoined from implementing or enforcing the Statute.


**ENTER:**     **January 21, 2009**

_____
**Robert W. Gettleman**
**United States District Judge**

---

[13]Although the court has rejected the Superintendent's proffer of the responses to its survey from a number of individual school districts in support of his motion for summary judgment, those responses can be deemed to be admissions against interest by members of the defendant class under Fed. R. Evid. 801(d)(2).

[14]For example, should a pupil request or participate in audible prayer during the period of silence, a school district or individual classroom teacher would have to determine how to accommodate or reject such a practice.